**KINGSBROOK JEWISH MEDICAL CENTER, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, and Associated Hospital Service of New York (Blue Cross), Defendants.**

**No. 72–C–1545.**

United States District Court, E. D. New York.

March 1, 1973.

Malcolm A. Hoffmann, New York City, for plaintiff; John M. Bray, Washington, D. C., of counsel.

Robert A. Morse, U. S. Atty. by Thomas A. Illmensee, Asst. U. S. Atty., Brooklyn, N. Y., for defendants; Jerome T. Levy, Deputy Regional Atty., N. Y. Region H.E.W., of counsel.

## DECISION

TRAVIA, District Judge.

Plaintiff moves this court for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting it summary judgment on all the claims set forth in the complaint. Defendants respond by cross-moving for an order dismissing the complaint, pursuant to Rule 12(b)(1) and (6), or in the alternative, for an order granting them summary judgment, pursuant to Rule 56.

Kingsbrook Jewish Medical Center, (hereinafter "Kingsbrook"), has been a participating "provider of services" in the federal program of Health Insurance for the Aged ("Medicare"), Title 42 U. S.C. § 1395 et seq., since the program's inception. Under the provisions of Title 42 U.S.C. § 1395cc, "providers" are required to enter into an agreement with the Secretary of Health, Education and Welfare. (hereinafter "Secretary"), not to directly charge Medicare benefit recipients for services rendered. Pursuant to the plan, the Blue Cross Association was nominated to act as fiscal intermediary for the administration of the program. (See Title 42 U.S.C. § 1395h). Blue Cross delegated its duties as fiscal intermediary for Kingsbrook to defendant Associated Hospital Service of New York, and the Department of Health, Education and Welfare made and continues to make Medicare payments to Kingsbrook through Associated Hospital Service.

Kingsbrook, as a charitable organization and voluntary provider under the Medicare Act, was and is entitled to be paid by the fiscal intermediary, Associated Hospital Service, that sum which represents the "reasonable cost" of those services which it has furnished Medicare beneficiaries. (See Title 42 U.S.C. § 1395f(b)). The "reasonable cost" of such services shall be determined through the means expressed in Title 42 U.S.C. § 1395x(v), subject to the provisions of § 1395e of the same Title.

Plaintiff alleges that during all the periods in issue, including the period from July 1, 1966, the effective date of the Medicare Act, to December 31, 1967, it was a "multiple facility" institution, providing both an acute division and a chronic division, which divisions constituted separate facilities. Further, plaintiff alleges that treating each facility as a separate cost entity satisfies the provisions of § 1395x(v), which stipulates that the costs with respect to individuals covered by the Medicare Act will not be borne by individuals not covered by the Act. It is alleged that during all the periods in issue, plaintiff has made repeated requests to have its costs computed separately for its separate facilities, and that such requests have been uniformly denied.

Plaintiff avers that it was advised on January 27, 1972 by the Secretary that, since "during all of the years" in question plaintiff offered "multiple facilities", it would be reimbursed for the reasonable costs incurred based on multiple facility accounting. However, such reimbursement, plaintiff alleges, was granted only for the period beginning January 1, 1968 and was "erroneously, arbitrarily and illegally refused for the period July 1, 1966 through December 31, 1967."

Offered as proof by the plaintiff that the Secretary has failed to reimburse it for the "reasonable costs" it has expended is Bureau of Health Insurance Intermediary Letter No. 295, dated December 13, 1967, which allegedly verifies that multiple facility accounting must be permitted for reasonable cost reimbursement purposes. Plaintiff insists that Title 42 U.S.C. § 1395x(v)(1)(B) requires the Secretary to adjust any inequities involving the reimbursement of providers, and if necessary to do so by making retroactive corrective adjustments.

As a result, plaintiff has commenced this suit, and seeks not only monetary damages from the defendants, but also injunctive relief. At this early stage in the proceedings, both plaintiff and defendants have moved for summary judgment, and defendants have additionally moved to dismiss the suit for lack of subject matter jurisdiction.

Defendants argue that the present action is within the doctrine of "sovereign immunity", and that the suit must fail if the Government has not "consented" to be sued. Further, the Government contends that the doctrine of sovereign immunity cannot be circumvented by naming defendants other than the United States Government in the complaint.

In the case of Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687–688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949), the Supreme Court said:

> "[I]t has long been established that the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign . . . the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign."

▪ In the case at bar, any relief granted to plaintiff will be relief against the sovereign, for the Medicare Act makes clear that Associated Hospital Service is only a conduit through which the "reasonable costs" expended by the "provider" may be recovered from the Government. The issue in this case, therefore, is simply whether the Government has consented to be sued, by way of review, in the district court after the Secretary allegedly failed to reimburse Kingsbrook for the "reasonable costs" it has expended in providing services for patients under the Medicare Act.

The Medicare Act, Title 42 U.S.C. § 1395 et seq., expressly provides for judicial review in only two types of determinations relevant to a provider of services:

When a determination has been made

(1) that an institution is not qualified to be a provider of services; and

when a determination has been made

(2) that a provider of services agreement should be terminated. *See* Title 42 U.S.C. § 1395ff, which reads in pertinent part:

> "(c) Any institution or agency dissatisfied with any determination by the Secretary *that it is not a provider of services*, or *with any determination described in section 1395cc(b)(2) of this title*, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and *to judicial review of the Secretary's final decision* after such hearing as is provided in section 405(g) of this title." (Emphasis added.)

Title 42 U.S.C. § 1395cc(b)(2) reads:

> "An agreement with the Secretary under this section may be terminated —(2) by the Secretary at such time and upon such reasonable notice to the provider of services and the public as may be specified in regulations, but only after the Secretary has determined (A) that such provider of services is not complying substantially with the provisions of such agreement, or with the provisions of this subchapter and regulations thereunder, or (B) that such provider of services no longer substantially meets

the applicable provisions of section 1395x of this title, or (C) that such provider of services has failed to provide such information as the Secretary finds necessary to determine whether payments are or were due under this subchapter and the amounts thereof, or has refused to permit such examination of its fiscal and other records by or on behalf of the Secretary as may be necessary to verify such information."

No provision of the Medicare Act provides for judicial review of determinations made under the statute which the plaintiff utilizes as a basis for his complaint, Title 42 U.S.C. § 1395f(b). Plaintiff, however, alleges that this court has jurisdiction under Title 28 U.S.C. §§ 2201 and 2202, Title 28 U.S.C. § 1331(a), Title 5 U.S.C. §§ 553, 701–706.

■ Title 28 U.S.C. §§ 2201–2202 concern themselves with the power of a federal district court to issue declaratory judgments; these sections do not confer jurisdiction where none exists. *See* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Plaintiff next insists that jurisdiction lies in this court by reason of Title 28 U.S.C. § 1331(a), the "federal question" statute. Title 42 U.S.C. § 1395ii, however, reads in pertinent part:

"The provisions of . . . subsection . . . h . . . of section 405 of this title, shall also apply with respect to *this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter.*" (Emphasis added.)

Section 405(h) of Title 42 U.S.C. provides:

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary

shall be reviewed by any person, tribunal, or governmental agency *except as herein provided. No action against the United States, the Secretary, or any officer or employee shall be brought under section 41 [28 USC §§ 1331 et seq.] of Title 28 to recover on any claim arising under this subchapter.*" (Emphasis added.)

■ As a result, § 405(h) of the Social Security Act, which has been incorporated into the Medicare Act, makes it apparent that Title 28 U.S.C. § 1331(a), the federal question statute, cannot be made the jurisdictional predicate for this action. In this regard, see the case of Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co., 311 F.Supp. 405 (E.D.Wis.1970), wherein Judge Gordon analyzed, among other things, § 405(h), and said:

"In my opinion, the intent of Congress to deny judicial review for providers of services of determinations of reimbursable costs is clear . . . [T]here is no jurisdiction in this court to review a challenge by a provider of services to a determination of reimbursable costs under the act." *Id.* at 408–409.

*See also*, Kuenstler v. Occidental Life Insurance Co., 292 F.Supp. 532, 537 (C.D.Cal.1968).

This court, however, cannot overlook footnote 9 appended to the decision in Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971), which states that, in a similar situation to the case at bar,

"In any event, jurisdiction here is proper under 28 U.S.C. § 1331." *Id.* at 400, n. 9.

In that case, plaintiff providers[1] brought suit against the Secretary after the Secretary had *suspended* payments to plaintiffs under the Medicare Act. The exact issue was "whether a district court has jurisdiction to review the Secretary's decision, alleged to be without

---

1. Plaintiffs Dr. James V. Aquavella and Dr. Salmon Harvey operated the "Glen Oaks Nursing Home" as a partnership. The "Glen Oaks Nursing Home" was a "provider of services" under the Medicare Act, 42 U.S.C. § 1395x(u).

statutory authority and in violation of the Constitution, to suspend payments to a provider of services under the Medicare Act." [2] The Court of Appeals went on to say that "[b]ecause all parties apparently agree that the Medicare Act *by its terms* does not provide for judicial review in this case, our attention is directed to whether the Administrative Procedure Act (APA) does." [3] (Emphasis added.)

If the court intended in its analysis that jurisdiction to review was proper under 28 U.S.C. § 1331, there would have been no need to ascertain whether there was jurisdiction to provide judicial review under the Administrative Procedure Act. As a result, this court is humbly constrained to believe that the Court of Appeals included footnote 9 in its opinion in Aquavella v. Richardson, *supra*, to denote that it had jurisdiction under § 1331 to decide whether judicial review of the Secretary's decision existed by reason of the APA, and that judicial review of the matter at hand does not lie in this court *by reason of Title 28 U.S.C. § 1331.*

■ Lastly, plaintiffs allege that jurisdiction lies in this court pursuant to Title 5 U.S.C. §§ 553, 701–706. Under section 10 of the Administrative Procedure Act, the initial question presented is whether the Medicare Act "precludes judicial review" in these circumstances. In making this inquiry, the "question [should be] phrased in terms of 'prohibition' rather than 'authorization' because . . . judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." [4]

In the case of Aquavella v. Richardson, *supra*, the Court of Appeals for the Second Circuit ruled that the Secretary's decision to *suspend* payments to a provider of services under the Medicare Act *was* judicially reviewable, by reason of the Administrative Procedure Act, despite the lack of explicit statutory authority to review the decision within the framework of the Medicare Act.

Title 5 U.S.C. § 702 reads:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

While this section of the Administrative Procedure Act embodies a "presumption of judicial review", it must be read consistently with two other sections of the same Act. Title 5 U.S.C. § 701(a) expressly provides that the Act shall not apply when "statutes preclude judicial review", or when "agency action is committed to agency discretion by law." Further, Title 5 U.S.C. § 704 provides for review of "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."

In *Aquavella,* the Secretary argued that the suspension of payments to a provider was not reviewable because of the Medicare Act's express provision for review only in two specific instances relevant to providers, i. e., (1) when the Secretary has determined that an institution was not qualified to be a provider, and (2) when the Secretary has determined that a provider of services agreement should be terminated. [5]

Furthermore, the Secretary argued that the incorporation of the review provisions [6] of the Social Security Act into the Medicare Act [7] operates as an express preclusion of judicial review.

---

2. Aquavella v. Richardson, 437 F.2d 397, 400 (2d Cir. 1971).

3. *Id.*

4. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed. 2d 681 (1967).

5. *See* 42 U.S.C. § 1395ff(c) and 42 U.S.C. § 1395cc(b)(2), *supra.*

6. 42 U.S.C. § 405(h).

7. The incorporation of the Social Security Act provisions into the Medicare Act is authorized by 42 U.S.C. § 1395ii.

The review provisions of the Social Security Act read as follows:

> "The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . ." 42 U.S.C. § 405(h).

In light of this provision, the Secretary urged that the decision of the Secretary suspending payments could *not* be reviewed, except as provided in the Medicare Act, for the Medicare Act did not expressly provide for review of a suspension of payments. (*See* the only available statutory review in Title 42 U.S.C. § 1395ff(c) and § 1395cc(b)(2)). Alternatively, the Secretary argued that the Medicare Act *impliedly* precludes review of the suspension of payments, because Congress carefully selected the types of Medicare determinations involving extended care facilities to be reviewed, and omitted review of such a decision to *suspend* payments to a provider.[8]

The court in *Aquavella* was not persuaded by these arguments, however, for the court was of the opinion that the second sentence of § 405(h) does not preclude review, but simply forbids attempts to review final decisions on the merits *by any other means* other than those provided for in the Medicare Act. The court went on to say:

> "[W]here the Act does not provide such procedures, section 405(h) does not preclude review . . . Where, as here, the review procedures of the Medicare Act do not apply, they do not limit 'nonstatutory' review." [9]

As a result, the court was not convinced that the Medicare Act expressly or impliedly precluded suit so as to vitiate the policy of the Administrative Procedure Act, which embodies a "presumption of reviewability." [10]

Lastly, the court ruled that the suspension of payments to the provider of services was "final" agency action within the meaning of Title 5 U.S.C. § 704, for the "careful balancing of the need for effective judicial protection against the need for efficient and responsible administrative action" made the case ripe for review.[11]

---

8. A Senate report appended to the decision was alleged by the Secretary to be in support of his position; S.Rep. No. 404, 89th Cong., 1st Sess. 54–55 (1965). U.S.Code Cong. & Admin.News, p. 1995. It reads as follows:

    "The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan and the supplementary plan, as to whether individuals are entitled to hospital insurance benefits or supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the amount of benefits under the hospital insurance plan if the amount in controversy is $1,000 or more. (Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where

claims will probably be for substantially smaller amounts than under part A.) *Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive.*" [Emphasis supplied by Secretary.]

    This argument must be viewed in light of the Supreme Court's statement that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed. 2d 681 (1967).

9. Aquavella v. Richardson, *supra*, note 2, 437 F.2d at 402.

10. *See* 5 U.S.C. § 702.

11. Aquavella v. Richardson, *supra*, note 2, 437 F.2d at 403, 404.

While *Aquavella* appears to provide ample support for the proposition that plaintiff's action in the case at bar is within the subject matter jurisdiction of this court, there are several factors which distinguish that case from this one.

Initially, this court must emphasize that the Court of Appeals included a specific disclaimer in its opinion with regard to the issue in *this* case, i. e., the payment of reimbursable costs to providers:

> "What is not at issue is whether Glen Oaks [the provider] was overpaid or what was the amount of such overpayment *or even the scope of the district court's jurisdiction to review such issues.*" [12]  (Emphasis added.)

Secondly, the court did not hold that a congressional intent was "clear(ly) and convincing(ly)" [13] manifested which would preclude judicial review of the Secretary's decision to *suspend* payments to a provider. Indeed, Senate Report No. 404 specifically declares that:

> "*Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive.*" [14]

▇ This court will not be presumptuous and decide whether the *suspension* of payments to a provider comes within the purview of Title 42 U.S.C. §§ 1395ff(c) and 1395cc(b)(2), which sections call for the judicial review of a Secretary's decision to *terminate* a provider agreement, for that task has been assigned to another district court by the Court of Appeals.[15] Similarly, the Senate's policy of allowing judicial review in

instances regarding a provider's "eligibility to participate in the program" [16] is clearly not at issue here. What *is* at issue here is whether Congress intended to deny judicial review to providers of services who wish to challenge a determination of reimbursable costs under the Act, and the language of the Senate report leaves no room for an interpretation that such a challenge is reviewable in this forum. The report specifically declares that only questions involving a provider's "eligibility to participate in the program" shall be reviewable, and "that the remedies provided by [those] review procedures shall be exclusive." [17] No interpretation of that language in the report would lead one to believe that Congress evinced a policy which would call for the judicial review of reimbursable costs to providers.

This court holds that the congressional intent to preclude judicial review of a Secretary's determination regarding reimbursable costs to a provider is "clear and convincing." [18] One need only look to the 1972 Social Security Amendments, P.L. 92–603 (Oct. 30, 1972), to verify such a conclusion. Section 1878, while to date untested, may cover a situation such as in the case at bar, and Section 1878(f) provides that a decision of the newly created "Provider Reimbursement Review Board" may, in some instances, be reviewed in the Federal District Court by the commencement of a civil action. Section 243(c) of P.L. 92–603, however, reads as follows:

> "(c) The amendments made by this section shall apply with respect to cost reports of providers of services, as defined in title XVIII of the Social Security Act, for accounting periods ending on or after June 30, 1973."

12. *Id.*, 437 F.2d at 400.

13. *Id.*, 437 F.2d at 402.

14. S.Rep. No. 404, *supra*, note 8.

15. Aquavella v. Richardson, *supra*, note 2, 437 F.2d at 403.

16. S.Rep. No. 404, *supra*, note 8.

17. *Id.*

18. Abbott Laboratories v. Gardner, *supra*, note 4, 387 U.S. at 141, 87 S.Ct. 1507.

In the case at bar, however, the dispute over the reimbursable costs involves the period from July 1, 1966 to December 31, 1967, and thus, by the express mandate of P.L. 92–603, would not be covered by the newly enacted statute.

Accordingly, the complaint is dismissed for lack of subject matter jurisdiction in this court.[19]

Settle an order on notice in accordance with this decision.

19. *See* Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co., 311 F.Supp. 405, 408 (E.D.Wis.1970).